IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**TREMAIN THOMPSON,**

   **Plaintiff,**

v.                         **Case No. 05-3470-JWL**

**JEFF HOOPER,**
*Administrator of Riley County Jail*

   **Defendant.**

## MEMORANDUM AND ORDER

   This case involves a civil rights action brought under 42 U.S.C. § 1983 by plaintiff against Jeff Hooper, Administrator of the Riley County Jail. Mr. Thompson alleges that Mr. Hooper deprived him of his constitutional rights because jail officials opened his clearly marked legal mail outside his presence, refused him access to either a law library or copies of statutes, and denied him the right to attend religious services while he was housed separately in a restricted pod for violent or unruly inmates.

   This matter comes before the court on Mr. Hooper's motion for summary judgment (doc. 13). For the reasons explained below, the motion is granted regarding all three of Mr. Thompson's claims, and the entirety of this action is hereby dismissed.

## **Background**

Mr. Thompson was incarcerated in the Riley County Jail sometime near November 2005. Initially, he was classified as a medium security prisoner and placed in the general population of the jail. But following his battery of another inmate, which he has not disputed, he was transferred to a restricted pod and segregated from the other inmates.[1]

While housed in a restricted pod of the jail because of his violent behavior, Mr. Thompson filed written complaints regarding three issues: (1) on two separate occasions, he received clearly marked legal mail that was already opened; (2) he was not provided copies of state and federal statutes or permitted to access a law library; and (3) he was denied the right to attend the jail's church services.

Mr. Hooper has responded to each of these allegations. First, he contends that Mr. Thompson's legal mail was wrongfully opened simply by mistake. Second, to the extent Mr. Thompson was denied access to a law library or copies of statutes, Mr. Hooper contends that he directed him to contact his attorney to obtain any legal materials. Third, regarding the right to attend church services, Mr. Hooper admits that he did not allow Mr. Thompson, a declared Muslim, to attend church services. But he states that he did so because Mr. Thompson was held in restrictive custody at the time for striking another inmate, and that "[m]aintaining the safety of the institution and protecting other prisoners constitutes a valid penological reason

---

[1] The record does not indicate when Mr. Thompson was first incarcerated in the Riley County Jail or when, if ever, jail officials transferred Mr. Thompson out of restrictive custody and back into the general population.

for the restriction." He also notes that all religious services at the jail are conducted by private citizens, and a submitted email confirms that Mr. Hooper agreed to allow a chaplain to visit Mr. Thompson's cell. Also, although none accepted his invitation, Mr. Hooper points out that he actively encouraged Muslim clerics in the community to provide services to inmates in the jail. Finally, jail officials provided Mr. Thompson a copy of the *Koran* and a copy of *A Brief Illustrated Guide to Understanding Islam* while he was incarcerated.

### **Standard of Review**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231-32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir. 1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

The moving party initially must show the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). In attempting to meet this standard, a movant that

does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir. 2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)); *Anderson,* 477 U.S. at 256; *Celotex,* 477 U.S. at 324. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir. 2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197-98 (10th Cir. 2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Summary judgment is not a "disfavored procedural shortcut"; it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex,* 477 U.S. at 327 (quoting Fed.R.Civ.P. 1). In responding to a motion for summary judgment, "a party cannot rest on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988).

The court is to liberally construe the pleadings of a pro se plaintiff, particularly in this context. *See Bainum v. Sedgwick County Commissioners*, 27 Fed. Appx. 965, 968 (10th Cir. 2001) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam)). That "means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The court, however, is not to become an advocate for either party, *see id.*, and "will not supply additional facts [or] construct a legal theory for plaintiff that assumes facts that have not been pleaded." *Dunn v. White*, 880 F.2d 1188, 1197 (10th Cir. 1989).

In applying this pro se standard, the court notes that in his summary judgment response, Mr. Thompson did not specify, with a citation to the record, any genuine issue of material fact. His conclusory assertion in his response that there are issues of fact therefore violates D. Kan Rule 56.1(b). *See O'Toole By and Through O'Toole v. Olathe Dist. Schools Unified School Dist. No. 233*, 144 F.3d 692, 709 (10th Cir. 1998); *Bolden v. City of Topeka*, 318 F.Supp.2d 1076, 1080 (D. Kan. 2004).

Identifying this deficiency, Mr. Hooper argues that by failing to comply with the local pleading rules, Mr. Thompson has waived his right to a response. Recognizing the liberal construction afforded to pro se litigants, however, the court has "diligently searched the record to determine whether genuine issues of material fact preclude the entry of summary judgment" in favor of Mr. Hooper. *Lee v. Larkin*, 2005 WL 41652, *4 (D. Kan. 2005). Additionally,

Mr. Thompson's complaint was sworn and made under penalty of perjury, so it is treated as an affidavit that may be used to defend against a motion for summary judgment.[2] *See Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir.1997). Thus, the court has examined whether any genuine issue of material fact precludes summary judgment.

## ANALYSIS

**1.     Suit Against Mr. Hooper in His Personal Capacity**

    **A.     Qualified Immunity**

The court will address the suit against Mr. Hooper under the assumption that Mr. Hooper is being sued in his individual, not official, capacity.[3] When an official is sued in his individual capacity, qualified immunity is the touchstone defense. It shields an official from civil liability so long as his or her conduct does not violate a clearly established statutory or constitutional right. Qualified immunity is not simply a defense to liability; it provides an outright immunity from suit. *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005).

Qualified immunity recognizes the legitimate "need to protect officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). It "provides

---

[2] The court acknowledges that it received Mr. Thompson's surreply, but because the court already had searched his sworn complaint to determine the existence of any disputed issue of material fact, his surreply did not affect the court's analysis.

[3] Ultimately, it is entirely unclear in what capacity Mr. Hooper is being sued. But as the court explains at the end of this opinion, Mr. Hooper would be entitled to summary judgment even if the court were to characterize the suit as an official capacity suit.

ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The court is bound by the "presumption in favor of immunity for public officials acting in their individual capacities." *Hidahl v. Gilpin County Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991).

Deciding whether Mr. Hooper retains his qualified immunity requires a two-part analysis. The threshold question is, taken in the light most favorable to the plaintiff, whether "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is no violation of a constitutional right, the analysis ends. *Saucier*, 533 U.S. at 201. If the factual allegations do amount to a constitutional violation, however, "the next, sequential step is to ask whether the right was clearly established at the time of the defendant's unlawful conduct such that a reasonable person in the defendant's position would have known that the alleged conduct violated the federal right." *Id.*

Upon an official's assertion of qualified immunity, "the burden shifts to the plaintiff to show that the defendant is not entitled to that immunity." *Douglas v. Dobbs*, 419 F.3d 1097, 1100 (10th Cir. 2005); *see also Scott v. Hern*, 216 F.3d 897, 908-09 (10th Cir. 2000). "Warning against rights asserted at too high a level of generality, the Supreme Court has made clear that the relevant inquiry must be undertaken in the specific context of the case." *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir.2005).

### B. Personal Participation

Equally important is the necessity for Mr. Thompson to establish that Mr. Hooper personally participated in each alleged constitutional violation.  Mr. Hooper is not liable simply because he was the jail administrator; "[i]ndividual liability under § 1983 must be based on personal participation in the constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) (citation omitted); *see also Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996).  This showing is necessary because "under § 1983, a defendant may not be held liable under a theory of respondeat superior." *Ledbetter v. City of Topeka*, 318 F.3d 1183, 1187 (10th Cir.2003) (internal quotation and citation omitted).  Mere negligent supervision is not actionable,  *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997), and Mr. Thompson must affirmatively link Mr. Hooper to each alleged constitutional deprivation based on Mr. Hooper's exercise of control or direction, or his failure to supervise.  *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1187 (10th Cir. 2001); *Worrell v. Henry*, 219 F.3d 1197, 1214 (10th Cir. 2000).

### C. The Three Alleged Constitutional Violations

#### 1. Opening of Legal Mail

If it is clearly marked as legal mail, Mr. Thompson has the right to receive his legal mail unopened.  *See, e.g., Florence v. Booker*, 2001 WL 1592703, *1 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 943-44 (10th Cir. 1990)).  That right is not absolute, however, and jail officials cannot be held liable for inadvertent negligence alone.  When faced with the allegation that prison or jail officials mistakenly have open clearly marked legal mail, the Tenth Circuit has "held that '[s]uch an isolated incident, without any evidence of improper

motive or resulting interference with [the inmate's] right . . . of access to the courts, does not give rise to a constitutional violation." *Id.* (quoting *Maschner*, 899 F.2d at 944). Because Mr. Thompson has alleged merely two isolated incidents in which jail officials opened his mail, he "must therefore show either an improper motivation by defendants or denial of access to the courts." *Id*. Because he has not alleged either of these conditions, he has failed to state a constitutional violation.

Beyond this, there is absolutely no explanation why Mr. Hooper is responsible for these two incidents. Mr. Thompson does not allege that Mr. Hooper had any connection to or supervision of the officials who opened his legal mail.

### 2. Access to Law Library and Statutes

Mr. Thompson also challenges his inability to access a law library and obtain copies of statutes while he was incarcerated. He contends that he was unconstitutionally denied the right to research state and federal law governing the charges that were pending while he was in jail.

His allegations, however, are inadequate to justify relief. "The Supreme Court has held that prisoners do not have 'an abstract, freestanding right to a law library or legal assistance' and therefore an inmate must 'demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim.'" *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quoting *Lewis v. Casey*, 518 U.S. 343, 351 (1996)). In a far more serious case where the prisoner plaintiff actually demonstrated how inadequate legal materials prejudiced his ability to access the courts, the Tenth Circuit nevertheless denied the

prisoner's claim for section 1983 relief. *See McBride v. Deer*, 240 F.3d 1287, 1290 (10th Cir. 2001). There, the Circuit also cited numerous prior decisions where it also had denied relief based on the plaintiff's vague assertion that he was prejudiced by inadequate legal materials. *See id.*

Here, Mr. Thompson provides no explanation exactly how he was prejudiced. He merely indicates that he wanted to ensure that his attorney was not missing a possible legal argument, but that is not specific enough. *See Williams v. Roberts*, 2005 WL 627965, *4 (D. Kan. 2005) (dismissing suit because plaintiff failed to specify exactly how he was prejudiced by the lack of legal materials). "Because he has not alleged and cannot allege facts showing he was unable to pursue a specific legal claim due to lack of access to a prison law library or legal assistance, he fails to state a claim. . . ." *Cook v. Ward*, 2004 WL 2862322,*2 (10th Cir. 2004) (citing *Lewis*, 518 U.S. at 352-53). As a final matter, he also does not refute that he had access to legal materials through his attorney at the time, which further negates any possible prejudice.

### 3.     Religious Services

Mr. Thompson's final claim is that he was denied the right to attend religious services. He contends that he was held in a restrictive pod beyond the time he was originally told he would be, and that he was denied the right "to go to church on numerous occasions" by jail officials.

In analyzing Mr. Thompson's Free Exercise claim, the court examines whether he was denied a reasonable opportunity to practice his religion. The First Amendment to the United

10

States Constitution provides, in pertinent part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . . ." U.S. Const. amend. I. These protections apply to state and municipal officials through the due process clause of the Fourteenth Amendment. *See Gitlow v. New York*, 268 U.S. 652, 666 (1925). The court acknowledges that "convicted prisoners do not forfeit all constitutional protections by reason of their conviction and confinement in prison," and "inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (internal citation omitted).

"In some instances, however, constitutional rights must be curtailed due to the very fact of incarceration or for valid penological reasons." *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir.2002) (citing *O'Lone*, 482 U.S. at 348). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)); *see also Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205, 1209 (10th Cir. 1999).

> To determine whether a regulation in this context is reasonable, the court considers:
>
> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide*, 286 F.3d at 1185 (citing *Turner*, 482 U.S. at 89-91).

Because of the inherent difficulties and dangers involved, "'judgments regarding prison security are particularly within the province and professional expertise of corrections officials, and in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters.'" *Beerheide*, 286 F.3d at 1184-85 (quoting *Turner*, 482 U.S. at 86). The Tenth Circuit has further advised that, "on a case-by-case basis," the court is "to look closely at the facts of a particular case and the specific regulations and interests of the prison system in determining whether prisoners' constitutional rights may be curtailed." *Id*. at 1185.

In applying this standard, the court is persuaded that Mr. Hooper reasonably decided to not allow Mr. Thompson to attend church services conducted for the general population of the jail. Mr. Hooper has demonstrated "a rational connection between placing [Mr. Thompson] in segregation and a legitimate governmental justification." *Derrick v. Ward*, 2004 WL 38545, *3 (10th Cir. 2004). In fact, Mr. Thompson never has refuted that he was guilty of battery against another inmate. That means he was properly transferred into a restricted pod and segregated from the general population for the safety and protection of the institution and other prisoners. This penological interest was Mr. Hooper's stated reason for denying Mr. Thompson access to church services, and Mr. Thompson has not refuted it.

Even though he was transferred into a restricted pod, however, Mr. Thompson still "had an alternate means to exercise his religious rights." *Id.* Not only could he freely pray in his cell, but the record reveals that: (1) Mr. Hooper freely granted permission for a chaplain to

12

privately visit Mr. Thompson in the restricted pod; (2) although none accepted his invitation, Mr. Hooper actively encouraged Muslim clerics in the community to visit inmates; and (3) jail officials provided Mr. Thompson with a copy of the *Koran* and a copy of *A Brief Illustrated Guide to Understanding Islam*.

In his response, Mr. Thompson does not refute any of these factors evidencing that he had a reasonable means to freely exercise his religion. In sum, "[b]ecause [Mr. Thompson] failed to come forward with any evidence to refute [Mr. Hooper's] showing that the restrictions placed on [him] were 'reasonably related to legitimate penological concerns,' he cannot establish that [Mr. Hooper] violated his First Amendment rights." *See id.* (citing *O'Lone*, 482 U.S. at 349). *See also Foote v. Houi*, 2004 WL 2901039, *1 (N.D. Ill. 2004) (opining that based on highly similar facts to the facts here, no constitutional violation occurred).

In venturing outside the Tenth Circuit, there is additional support from courts addressing the difficulties faced by local jails in accommodating the religious demands of their inmates. Given the disparity in resources between jails and prisons, what is "reasonable" for long-term housing in a state prison may not necessarily be "reasonable" for short-term housing in a local jail. *Cf. Beerheide*, 286 F.3d at 1185 (urging courts "to look closely at the facts of a particular case" in this specific realm). Both the short duration of Mr. Thompson's confinement in the Riley County Jail and the jail's limited resources are important considerations. For a cogent analysis involving facts highly similar to the facts of this case, see *Buck v. Lake County Sheriff*, 2004 WL 2983966, *7-9 (N. D. Ill. 2004). That court's

13

analysis is equally applicable to the facts here, particularly because Mr. Thompson has not refuted any of the arguments in Mr. Hooper's summary judgment brief. In sum, "[t]he uncontroverted evidence that [jail] officials accommodated Mr. [Thompson's] right to free exercise is sufficient to support summary judgment on his free exercise claims." *Mollie v. Ward*, 1997 WL 22525, *1-2 (10th Cir. 1997).

## 2.  **Suit Against Mr. Hooper in His Official Capacity**

Finally, even if the court were to interpret the suit against Mr. Hooper as though he were sued in his official capacity, rather than in his personal capacity, the result would be the same. To begin, a claim against Mr. Thompson in his official capacity is treated the same as a claim against the governmental entity, in this case Riley County. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Myers v. Oklahoma County Bd. of County Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998). Riley County is liable for the acts of its employees under § 1983 only if: (1) a municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind that constitutional violation. *Myers*, 151 F.3d at 1316. Often emphasized, the first factor is decisive; there absolutely must be an underlying constitutional violation by an employee before a municipality can be held liable. *Jennings v. City of Stillwater,* 383 F.3d 1199, 1205 n.1 (10th Cir. 2004) ( "[A] municipality cannot be liable for constitutional violations unless its officers committed a constitutional violation."); *Myers*, 151 F.3d at 1316 (same).

In this case, Mr. Thompson has not raised a genuine issue of material fact that any employee of Riley County violated his constitutional rights. Specifically, the only defendant

14

in this case is Mr. Hooper and, as analyzed above in the context of an individual capacity suit, Mr. Thompson has not established that Mr. Hooper violated his constitutional rights. Thus, without an underlying constitutional violation, Riley County cannot be found liable by a claim against Mr. Thompson in his official capacity. *See Marino v. Mayger*, 2004 WL 2801795, *11 (10th Cir. 2004); *Quint v. Cox*, 348 F. Supp. 2d 1243, 1251 (D. Kan. 2004).

### Conclusion

Based on the record and arguments presented, the court finds that Mr. Thompson has not demonstrated any genuine issue of material fact that prevents this court from ruling as a matter of law in favor of Mr. Hooper on all three of Mr. Thompson's claims. Accordingly, because Mr. Thompson has not alleged a constitutional violation, the motion for summary judgment is granted.

**IT IS THEREFORE ORDERED BY THE COURT** that Mr. Hooper's motion for summary judgment (doc. 13) is granted.

**IT IS SO ORDERED** this 25th day of April, 2006.

        s/ John W. Lungstrum
        John W. Lungstrum
        United States District Judge